UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLEY S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 19-cv-02648-SI <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 17, 24 |

Plaintiff Kimberley S. seeks Social Security benefits under Titles II and XVI for a variety of mental impairments including Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression.[1] Pursuant to 42 U.S.C. § 405(g), plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim. Now before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 17, 24. Having considered the parties' papers and the administrative record, and for the reasons set forth below, the Court GRANTS plaintiff's motion for summary judgment (Dkt. No. 17), DENIES defendant's cross-motion for summary judgment (Dkt. No. 24), and REMANDS this action for immediate payment of benefits, pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

In April 2016 and August 2016, respectively, plaintiff applied for Disability Insurance

---

[1] The Court partially redacts plaintiff's name to mitigate privacy concerns, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See also* Fed. R. Civ. P. 5.2(c)(2)(B).

Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Administrative Record ("AR") 231-46, 247-48. She alleged a disability onset date of June 5, 2015. *Id.* at 20. Her applications were denied originally and upon reconsideration. *Id.* at 147-52, 158-64. Plaintiff's applications were then heard by Administrative Law Judge ("ALJ") David LaBarre at a hearing on November 22, 2017. *Id.* at 20. The ALJ denied plaintiff's claims in a decision dated May 30, 2018.[2] *Id.* at 16. The ALJ found plaintiff had the following severe impairments: PTSD, anxiety disorder, and depressive disorder. *Id.* at 23. The ALJ also found, however, that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *Id.* at 24-27. The ALJ then determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain nonexertional limitations. *Id.* at 27. In light of that RFC finding, the ALJ concluded that plaintiff was not disabled because she was capable of performing her past relevant work as a mail clerk. *Id.* at 28.

Plaintiff filed a request for review of the ALJ's decision, and the Appeals Council denied review of plaintiff's claims on March 21, 2019, rendering ALJ LaBarre's denial the final decision of the Commissioner. *See id.* at 1-7. After the Appeals Council denied review, plaintiff sought review in this Court. Dkt. No. 1.

**ISSUES FOR REVIEW**

1.  Did the ALJ err in according reduced weight to the opinions of plaintiff's treating psychiatrists Dr. Streett and Dr. Fullar?

2.  Did the ALJ err in discounting plaintiff's symptom testimony?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason

---

[2] Plaintiff's motion states that the decision was issued May 24, 2018. *See* Pl.'s Mot. at 1.

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity;" (2) whether the claimant has a severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, the claimant can still do his "past relevant work"' and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012); *see also* 20 C.F.R. §§404.1520(a), 416.920(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett*, 180 F.3d at 1098. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d at 1110 (internal quotation marks and citations omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch*, 400 F.3d at 679.

**DISCUSSION**

**I.     The ALJ's Evaluation of the Medical Evidence**

Plaintiff contends that the ALJ erred in giving reduced weight to the opinions of her treating psychiatrists Dr. Robert Streett, M.D., and Dr. Hina Fullar, M.D. According to Dr. Fullar, plaintiff's

"personal history is mired with loss, neglect and severe emotional and sexual trauma." AR 560. When plaintiff was 12 years old, her uncle molested her and her mother then accused her of lying about it. *Id.* at 375, 1081. When plaintiff was 19 years old, during a trip to Boston, a group of five men raped her in a hotel room and no one responded to her screams for help. *Id.* at 560, 1081. Dr. Streett and Dr. Fullar diagnosed plaintiff with chronic and severe PTSD and major depressive disorder and opined that she would be unable to work due to the severity of her mental health symptoms. *Id.* at 349, 560, 924.

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). For claims filed before March 27, 2017, such as plaintiff's, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). As such, the ALJ must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. *Lester*, 81 F.3d at 830. Even where an examining physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that are supported by substantial evidence" in the record. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn*, 495 F.3d at 633).

### A. Dr. Streett

Plaintiff saw Dr. Streett for treatment at Kaiser from January 2014 until early 2016. AR 560, 924. The administrative record contains treatment notes and email correspondence from Dr. Streett as well as forms Dr. Streett completed for the California Employment Development Department to certify plaintiff's short-term disability leave from her job. Dr. Streett also authored two letters related to plaintiff's leave from work.

On April 14, 2014, Dr. Streett wrote a letter stating, in part, that plaintiff had

> severe, chronic, and treatment-refractory Post-Traumatic Stress Disorder, stemming from a group sexual assault that occurred at age 19, 29 years ago. She still has frequent nightmares and intrusive memories of this event, is chronically irritable and mistrustful of others, and is often severely depressed with thoughts of death and suicide. She has had intermittent psychiatric treatment, including trials of multiple psychiatric medications, over the past decade or so, none of it particularly helpful. Her negative feelings about herself and other people have been increasing in recent years, to the point that she no longer feels able to interact well with coworkers and customers in her job as a receptionist. I have given her disability leave from work, but it is not at all clear to me that she will be able to return to work within the one year limit for short-term disability benefits.

*Id.* at 924.

On November 6, 2015, Dr. Streett wrote a letter stating, in part, that plaintiff had

> ongoing symptoms of chronic and severe Post-Traumatic Stress Disorder stemming from a violent assault that occurred thirty years ago. At this time she is also suffering from a severe episode of recurrent Major Depressive Disorder. Her current symptoms cause marked distress and interfere significantly with her activities of daily living. She has been too disabled to work since June of this year, and I do not anticipate her being able to work any time soon. I have encouraged her to apply for Social Security Disability benefits.

*Id.* at 349.

The ALJ gave "little weight" to Dr. Streett's opinions contained in the two letters that plaintiff would be unable to work because of her psychological impairments. *Id.* at 25. The ALJ explained,

> … treatment provider Robert Stuart Streett, M.D., submitted two vague opinions, on April 14, 2014, and November 6, 2015, opining that the claimant would be unable to work due to her psychological impairments, but providing no detail or comprehensive assessments of particular functional limitations (Exhibits 1F; 8F). Because these assessments are not consistent with the totality of the record, and in particular with the claimant's sporadic engagement and compliance with treatment, and because they delve into matters left to the discretion of the Commissioner, I give these opinions little weight.

5

*Id.*

Because Dr. Streett's opinion is contradicted by the opinions of the State agency medical consultants, who found plaintiff was not disabled and was only mildly restricted in her activities of daily living, *see id.* at 99, 104-05, 115, 120, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Streett's opinion. *See Lester*, 81 F.3d at 830-31. The ALJ provided only two reasons, neither of which is a specific and legitimate reason.

First, the ALJ rejected Dr. Streett's opinion as "not consistent with the totality of the record, and in particular with the claimant's sporadic engagement and compliance with treatment[.]" AR 25. The ALJ did not support this statement with any citation to the over 1000-page record. This was error. *See Garrison*, 759 F.3d at 1012 ("An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Moreover, the record is replete with indications that plaintiff's "sporadic" treatment, if it can be called "sporadic," was attributable to problems with her health insurance and her inability to afford the co-pay. *See, e.g.,* AR 417 (October 2015 treatment note that her medical benefits will end in January and she is "freaking out" about where she will receive treatment), 428 (April 2016 treatment note that her large co-pays "limit her ability to attend follow-up appointments with psychiatrist, her therapist (Richard Carson) and even to fill medications"), 561 (September 2016 letter from Dr. Fullar that plaintiff's psychiatric care is partially compromised by her inability to pay co-pays), 814 (June 2016 treatment note that she can't afford to go back to her therapist), 1061 (January 2017 treatment note that she "can't afford the co-pays for visits or medication" and was not taking her meds "in about eight months because she can't afford the co-pays"). In *Regennitter v. Commissioner of the Social Security Administration*, 166 F.3d 1294, 1296-97 (9th Cir. 1999), the Ninth Circuit found an ALJ's rejection of the claimant's symptom testimony was not supported by substantial evidence, where the record showed the claimant received regular treatment until his

insurance coverage ran out and where it was uncontested that he did not seek more treatment or take prescription medications because he could not afford it. So too here.

The record also shows that on at least two occasions, plaintiff was going to therapy but then had her treatment end through no fault of her own. On one occasion, around May 2014, her therapist retired and Kaiser did not connect her to a new therapist. *See* AR 375. Another time, plaintiff was referred to a different modality of treatment that her then-therapist said was incompatible with seeing that therapist at the same time. *See id.* at 59-60 (explaining at the November 2017 hearing that while plaintiff was trying to access an EMDR therapist through the county, her current therapist sent her a text message to say "she was closing [her] out").

In the above context, the Court finds that what the ALJ characterized as "sporadic engagement and compliance with treatment" is not a legitimate reason to discount the opinions of treating physician Dr. Streett.

The ALJ also rejected Dr. Streett's opinions "because they delve into matters left to the discretion of the Commissioner[.]" *Id.* at 25. While an ALJ is not bound by a treating physician's determination on the ultimate issue of disability, *see* 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), "an ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). In order to discredit Dr. Streett's opinions, the ALJ was required to provide specific, legitimate reasons for doing so, and the ALJ did not do so here. *See Garrison*, 759 F.3d at 1012.

Finally, the Court agrees with plaintiff that the ALJ erred in weighing the opinion of a treating physician such as Dr. Streett without applying the factors listed in 20 C.F.R. §§ 404.1527, 416.927. The regulations "provide that, when a treating source's opinions are not given controlling weight, an ALJ must apply the factors in 20 C.F.R. § 404.1527(c)(2)(i-ii) and (c)(3-6) in determining how much weight to give each opinion." *Garrison*, 759 F.3d at 1012 n.11. These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, and specialization. Here, the ALJ did not discuss any of these factors, many if not all of which weigh in favor of giving Dr. Streett's opinions

controlling weight. Dr. Streett was plaintiff's treating psychiatrist since January 2014, and thus had been treating and examining plaintiff since before and through the start of her requested disability period. Moreover, Dr. Streett's opinion merits more weight because it is "the medical opinion of a specialist about medical issues related to his . . . area of specialty[.]" *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Without discussing any of these factors, the ALJ gave "little weight" to the opinions of plaintiff's treating psychiatrist, while simultaneously giving "significant weight" to the opinions of the State agency medical consultants, who never examined plaintiff. *See* AR 25-26, 28. The ALJ's failure to consider the factors outlined in the regulations "alone constitutes reversible legal error." *See Trevizo*, 871 F.3d at 676.

In sum, the ALJ erred both by rejecting Dr. Streett's opinions without providing specific and legitimate reasons supported by substantial evidence in the record and by failing to apply the factors set forth in the regulations.

### B. Dr. Fullar

The ALJ rejected the opinion of treating psychiatrist Dr. Fullar on largely the same grounds as those used to reject Dr. Streett. Plaintiff began seeing Dr. Fullar in April 2016. AR 560. On September 30, 2016, Dr. Fullar wrote a letter summarizing plaintiff's personal history and psychiatric treatment and stating that plaintiff "suffers from multiple symptoms of chronic Post Traumatic Stress Disorder (PTSD) and Major Depressive disorder with suicidal ideation." *Id.* Dr. Fullar described plaintiff's depression as "characterized by persistently low mood, crying spells, significant appetite changes, insomnia, poor focus, agitation, decreased energy, decreased libido, isolation, and irritability." *Id.* Dr. Fullar went on to state,

> Her psychiatric presentation is further compounded by severe symptoms of PTSD (after having been sexually assaulted by 5 men at age 19). Her symptoms of PTSD are characterized by nightmares, flashbacks, intrusive recollections, irritable and unstable mood, anger, pessimism, and [a] sense of hopelessness. Her symptoms of PTSD are severe and maladaptive enough to border on psychotic spectrum. As a result, she experiences persecutory and referential ideation, manifesting as gross mistrustfulness towards people. Her symptoms render her social interaction often quite inappropriate . . . . Due to her discomfort and distress among people, . . . she has difficulty going outside of her home. . . .

8

> Her psychiatric symptoms which have not responded to psychiatric treatment with adequate resolution[] continue to interfere with her ability to work. The combination of Depressive and PTSD symptoms impair her ability to engage in sustained gainful employment as she suffers from poor energy, impaired concentration, difficulty in formulating and executing simple decisions, gross limitation of interpersonal interactions and severe distress in public places. Her social history indicates that her occupational and social functioning has been directly compromised by her chronic psychiatric symptoms.
>
> In this writer's professional opinion, [plaintiff] suffers from chronic and persistent mental illness which has resulted into gradual functional decline and have [sic] led to marginal social and occupational functioning. It is unlikely for her to regain such function to the extent where she can obtain and maintain competitive gainful employment. . . .

*Id.* at 560-61.

The ALJ gave "some weight" to Dr. Fullar's "recounting of the claimant's treatment history and symptoms," but gave "little weight" to Dr. Fullar's work-related conclusions, finding that Dr. Fullar "intrudes into areas left to the discretion of the Commissioner, such as opining that the claimant would be unable to maintain gainful employment[.]" *Id.* at 25. The ALJ also found "that the reported level of symptom severity is not fully consistent with the record as a whole, including the claimant's somewhat sporadic engagement with treatment." *Id.*

For the reasons explained more fully above in Section I.A, the Court finds the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting the opinion of treating physician Dr. Fullar. The ALJ improperly rejected Dr. Fullar's opinion as intruding into areas left to the discretion of the Commissioner, but "an ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability." *See Ghanim*, 763 F.3d at 1161. This is particularly so here, where the ALJ failed to address the underlying bases for Dr. Fullar's disability opinion, such as Dr. Fullar's conclusion that plaintiff's psychiatric symptoms impaired her concentration, led to difficulty in formulating and executing simple decisions, grossly limited her interpersonal interactions, and caused severe distress in public places. *See* AR 560-61. As also explained above, even accepting the ALJ's characterization of plaintiff's treatment as "sporadic," this was not a specific and legitimate reason to reject Dr. Fullar's opinion, where the record shows plaintiff could not afford treatment and where at least two therapists stopped treating plaintiff while plaintiff indicated a willingness to continue treatment. Finally, the ALJ erred because, as with Dr.

9

Streett, the ALJ weighed Dr. Fullar's opinion without applying the factors listed in 20 C.F.R. §§ 404.1527, 416.927.

## II. The ALJ's Evaluation of Plaintiff's Symptom Testimony

Plaintiff also challenges the ALJ's rejection of her symptom testimony. The Ninth Circuit has established a two-step analysis for determining how to credit a claimant's symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . .
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). If the ALJ finds the claimant's allegations of severity are not credible, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

At the first step of the credibility test, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" AR 28. The ALJ cited no evidence of malingering. Moving to the second step, the ALJ found plaintiff's "statements concerning the intensity, persistent and limiting effects of these symptoms [to be] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

The ALJ provided two reasons for finding plaintiff's statements regarding her symptoms to be inconsistent with the record: (1) "as noted above, her engagement with treatment has been sporadic[;]" and (2) "her conditions, while severe, do not cause the level of dysfunction she reports." *Id.* For the reasons explained in Section I.A above, the Court finds that any allegedly "sporadic" engagement with treatment is not a clear and convincing reason to reject plaintiff's statements,

particularly given the numerous and consistent records documenting her inability to afford her insurance co-pay.

As to the second rationale the ALJ provided, the citations the ALJ gave do not support the finding that plaintiff's "conditions . . . do not cause the level of dysfunction she reports." *See id.* In making this finding, the ALJ discounted the statements of "some providers [who] have chosen to opine in very general terms that the claimant is unable to perform any work," finding "these assessments are general and based on subjective reports rather than objective measures (*see* Exhibits 1F; 5F; 8F; 13F)." *Id.* The ALJ cited the two letters from Dr. Streett, the letter from Dr. Fullar, and a 2017 psychological evaluation by licensed clinical psychologist Sherry Lebeck, Ph.D., to whom plaintiff was referred by her then-therapist Louise Morgan.[3] As an initial matter, the ALJ did not address the fact that Dr. Streett's and Dr. Fullar's opinions were not simply based on plaintiff's "subjective reports" but also on their history of treating plaintiff over a span of several years (Dr. Streett) and several months (Dr. Fullar). Moreover, Dr. Lebeck's report lists the various tests that Dr. Lebeck administered and the treatment records she reviewed and therefore on its face contradicts the ALJ's assessment that it was based solely on subjective reports. *See* AR 1080.

To the extent the ALJ rejected the opinions of Drs. Streett, Fullar, and Lebeck because the ALJ perceived them to be "based on subjective reports," the ALJ erred. The Ninth Circuit has held that "a clinical interview and a mental status evaluation . . . are objective measures and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *see also Savannah v. Astrue*, 252 F. App'x 783, 785 (9th Cir. 2007) ("Diagnosis by a medical expert constitutes objective medical evidence of an impairment."); *cf. Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998) ("Depression, diagnosed by a medical professional, is objective medical evidence of pain to the same extent as an X-ray film."). The Ninth Circuit has instructed,

> Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

---

[3] Dr. Lebeck examined plaintiff on July 27, 2017, and the report is dated August 19, 2017. AR 1080.

11

*Buck*, 869 F.3d at 1049 (citing *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987) ("However, unlike a broken arm, a mind cannot be x-rayed.")); *see also Ferrando v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 610, 612 (9th Cir. 2011) ("[M]ental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms (as do all doctors) . . . . To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders."); *see also Regennitter*, 166 F.3d at 1300 (holding ALJ erred in discounting opinion of examining psychologist on the ground that psychologist "appears to have taken [the plaintiff's] statements at face value" because there was no evidence that the plaintiff was malingering or deceptive). This is the type of conclusory statement that the Ninth Circuit has repeatedly held insufficient. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.1988) ("To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."); *see also Regennitter*, 166 F.3d at 1299.

The ALJ also stated that plaintiff's conditions did not cause the level of dysfunction she reports by citing: (1) "relatively normal mental status findings, at odds with the dire opinions regarding an inability to work[;]" and (2) the June 2016 opinion by State agency consultant Monica Yeater, Psy.D., who "opined with a reasonable degree of psychological certainty that the claimant was not in immediate danger of self-harm or other violence (Exhibit 2F)." AR 28. It is not clear what the relevance is of Dr. Yeater's opinion. Plaintiff need not demonstrate that she is in immediate danger of self-harm in order to meet Listing 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.15 (trauma- and stressor-related disorders). *See* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm. Thus, by the SSA's own definition, a claimant may be found disabled on the basis of depression, anxiety, or PTSD without being in immediate danger of self-harm.

As to the ALJ's reference to "relatively normal mental status findings," the Court finds the records on which the ALJ relied do not support this conclusion. While some of the citations the ALJ provided are to mental status examinations, other citations are to completely unrelated records

12

or to records that show plaintiff suffering from a range of mental health issues. For instance, the ALJ cited to Exhibits 7F/39, 59, 74, and 9F/8. *See* AR 28. These are California Employment Development Department forms that Dr. Streett completed to certify plaintiff's continuing eligibility for short-term disability leave. *Id.* at 827, 847, 862, 932. These forms do not contain mental status findings; rather, they list plaintiff's diagnoses and contain statements from Dr. Streett that plaintiff cannot return to work because of her "Depressed mood, emotional volatility, anxiety, poor concentration." *See id.* at 827, 847 (same), 862 (same), 932 (same, with anxiety described as "pervasive"). The ALJ also cited to treatment notes from plaintiff's Kaiser clinician, LCSW Richard Carson, that consistently show plaintiff struggling with her mental health. *See, e.g.*, *id.* at 28 (citing 7F/21 (listing plaintiff's mood as "depressed"), 7F/22 (noting that plaintiff reported significantly worsened symptoms, that ongoing depression symptoms led to a recent hospitalization, and that current symptoms include: depressed mood, anhedonia, insomnia, irritability, decreased energy, hopelessness, decreased concentration), 7F/52 (listing current depressive symptoms as "depressed mood, anhedonia, crying spells, significant appetite change, decreased energy, guilt, hopelessness, decreased concentration, recurrent thoughts of death"), 7F/131 (describing mood as "dysphoric and irritable" and noting on the prior page that plaintiff scored in the "severe" range of the PHQ-9 Patient Health Questionnaire and GDS Global Distress Score)); *see also id.* at 809-10, 840, 918-19. In sum, the ALJ's statement that the records show "relatively normal mental status findings" is not supported by substantial evidence because many, if not most, of the records in the ALJ's string cite either do not contain mental status findings or else support plaintiff's claim of debilitating mental health symptoms.

Accordingly, the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.

### III. Remedy

Plaintiff argues that remanding solely for calculation and award of benefits is appropriate in this case. Pl.'s Mot. at 25; Pl.'s Reply at 11-13. Defendant disagrees, arguing that "no doctor actually indicated any functional assessment regarding Plaintiff's mental impairments or assessed

13

any limitations." Def.'s Cross-Mot. at 11-12.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id*. (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful." *Id*. (citations and internal quotation marks omitted). Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id*. (citing *Treichler*, 775 F.3d at 1101). Even when all three criteria are met, whether to make a direct award of benefits or remand for further proceedings is within the district court's discretion. *Id*. (citing *Treichler*, 775 F.3d at 1101). In rare instances, all three credit-as-true factors may be met but the record as a whole still leaves doubts as to whether the claimant is actually disabled. *Trevizo*, 871 F.3d at 683 n.11. In such instances, remand for further development of the record is warranted. *Id*.

Here, the Court has found that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of plaintiff's treating practitioners—Drs. Streett and Fullar—and in discrediting plaintiff's symptom testimony. The Court further finds that there are no outstanding issues to resolve. The record in this case is over 1000 pages and contains records from numerous doctors' visits and multiple physical and mental health evaluations. Plaintiff's treating practitioners met with her frequently and established relationships with her. The record does not need further development, and further administrative proceedings would not be useful.

Crediting the discredited testimony as true, there is no doubt as to plaintiff's disability. Numerous treating and examining providers have diagnosed plaintiff with PTSD and depression. AR 349, 560, 924, 1084. Notably, the ALJ discounted the opinions of all of plaintiff's treating and

14

examining physicians, i.e., Dr. Streett, Dr. Fullar, and Dr. Lebeck. In the entire ALJ decision, the only physicians whose opinions received "significant weight" were those of the State agency consultants who reviewed plaintiff's file but did not examine or treat her. *See id.* at 26, 28. Yet the ALJ discounted even these opinions in certain areas, finding the consultants' assessment that plaintiff would have moderate difficulties in her ability to perform activities within a regular schedule, maintain regular attendance, be punctual, and complete a normal workday or work week without interruptions from psychologically based symptoms warranted "some weight" but not "significant weight." *See id.* at 26. "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *See Craig v. Astrue*, 269 F. App'x 710, 712 (9th Cir. 2008) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)).

The hypothetical questions the VE answered during plaintiff's administrative hearing illustrate plaintiff's disability. The Ninth Circuit has consistently remanded for an award of benefits in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess if improperly discredited opinions or testimony were taken as true. *See, e.g.*, *Garrison*, 759 F.3d at 1022; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). In those cases, the claimant's counsel presented an alternative hypothetical to the VE that included the claimant's limitations and RFC as described by medical opinion or the claimant's testimony. In each case the VE responded to that hypothetical by saying that a person with those limitations would be disabled. And in each case, the appeals court found that based on that evidence, the ALJ would be required to find the claimant disabled on remand if the improperly rejected evidence were credited as true.

Here, the ALJ and plaintiff's counsel posed multiple hypothetical questions to the VE. AR 63-70. The VE testified that a claimant who had marked limitation in concentration, persistence, or pace; who would be off task 15% of the time or more; or who would be consistently absent from work more than one time per month would not be able to maintain employment. *Id.* at 69-70. At the hearing, plaintiff testified that she has crying spells "a lot," and that she is terrified to leave the house and most days is essentially homebound. *Id.* at 56-58. The function report she completed in

15

June 2016 states that she is "not able to control emotions of anxiety or nightmares that [she] experience[s] even during the day." *Id.* at 291. Dr. Lebeck's report notes that plaintiff repeatedly hears the voice of one of her rapists. *Id.* at 1081. After crediting these statements as true, and particularly when coupled with the improperly discounted opinions of the treating physicians, the VE's testimony provides adequate basis for the Court to conclude that plaintiff is disabled without the need to remand for further proceedings. *See Garrison*, 759 F.3d at 1022.

Defendant argues that the record as a whole creates serious doubt as to plaintiff's disability, arguing that "no doctor actually indicated any functional assessment regarding Plaintiff's mental impairments argument or assessed any limitations[,]" and that "even Plaintiff's treating physician released Plaintiff for full time work, despite his letters to the contrary." Def.'s Cross-Mot. at 11-12. Reading the record as a whole, the Court disagrees. The record contains treatment notes, letters, and evaluations from treating providers, namely Drs. Streett and Fullar, both of whom found, in 2014, in 2015, and in 2016, that plaintiff was unable to return to work. These conclusions were corroborated by examining psychologist Dr. Lebeck, who opined in August 2017 that "it is clear that [plaintiff] is in no emotional condition to return to work at this time, and that she should be referred for intense psychotherapy to work through issues related to the rape and molestation." AR 1085. In light of the numerous, consistent records and opinions from both treating and examining physicians in this case, the Court will not remand for further proceedings solely for a doctor to complete a formal "functional assessment" form. The ALJ did not indicate that he was rejecting the opinions of Drs. Streett and Fullar based on a lack of any functional assessment, and the Court finds there would be little utility in remanding for the doctors to complete a form opining that plaintiff would miss "X" number of workdays per month, when they already provided letters stating that they did not think plaintiff could work *at all*.

Additionally, defendant is incorrect that plaintiff's treating physician, Dr. Streett, released plaintiff to full-time work. Defendant states that "Plaintiff was released to full time work on July, August, and October 2015 by Dr. Streett (AR 351-52, 354-56), and again in January and August 2016 (AR 353, 359)." Def.'s Cross-Mot. at 8. A review of these records shows that Dr. Streett was prospectively certifying plaintiff's disability leave from work during these periods, and that each

16

1  time the disability period was due to end, Dr. Streett re-evaluated plaintiff and extended her leave.
2  *See* AR 351-61 (Dr. Streett certifying plaintiff's leave from work from June 8, 2015, through April
3  17, 2016); *see also id.* at 361 (Dr. Fullar certifying plaintiff's leave from work from April 18, 2016
4  through June 17, 2016).[4]

5  For all of the above reasons, the Court sees no basis for serious doubt in the record that
6  plaintiff is disabled. Moreover, remand for benefits is appropriate here where plaintiff first applied
7  for benefits over four years ago and has already experienced lengthy, burdensome litigation. *See*
8  *Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001).

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate payment of benefits.

**IT IS SO ORDERED**.

Dated: September 25, 2020

SUSAN ILLSTON
United States District Judge

---

[4] At the hearing, plaintiff testified that she took medical leave in 2014 and then returned to work in 2015 because she would be eligible for early retirement from her job at Kaiser if she worked through the end of 2015. AR 54-55. However, she was unable to work past June 2015. *Id.* at 349.

17